IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JACOB AUSTIN SCHNEIDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:22-cv-871 (LMB/WEF) |
| ) | |
| COUNTY OF FAIRFAX, ) | |
| ) | |
| Defendant. ) | |

<u>MEMORANDUM OPINION</u>

Before the Court is defendant County of Fairfax's ("defendant" or "the County") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss") [Dkt. No. 17], which includes a notice consistent with <u>Roseboro v. Garrison,</u> 528 F.2d 309 (4th Cir. 1975). The Motion to Dismiss seeks dismissal of the Amended Complaint filed by <u>pro se</u> plaintiff Jacob Austin Schneider ("plaintiff" or "Schneider"), which alleges that the defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, <u>et seq.</u> when it terminated him from his position as an Industrial Electrician due to his refusal to comply with the County's COVID-19 policy. Plaintiff has filed an opposition to defendant's Motion to Dismiss. Having considered the parties' submissions, the Court finds that oral argument will not assist the decisional process, and for the reasons that follow, defendant's Motion to Dismiss will be granted, and plaintiff's Amended Complaint will be dismissed.

I. BACKGROUND

The facts referenced in this opinion are taken from the Amended Complaint and its extensive attachments.[1] Schneider was employed with the Fairfax County Department of

---

[1] Plaintiff has attached over 100 pages of documents to the Amended Complaint. These documents are contained in a separate docket entry from the Amended Complaint but, as they

Wastewater Management as an Industrial Electrician from July 6, 2020 to March 16, 2022. [Dkt. No. 14] at ¶¶ 21, 54; [Dkt. No. 15-1] at 107. In that position, he was responsible for maintaining the defendant's "electrical equipment in pump stations." [Dkt. No. 14] at ¶ 21. In response to the COVID-19 pandemic, the County developed a COVID-19 policy, which it disseminated to all its employees on September 3, 2021. Id. at ¶ 23; [Dkt. No. 15-1] at 6. In relevant parts, the policy required all Fairfax County employees either to be fully vaccinated against COVID-19 or to submit to weekly testing for COVID-19 beginning October 11, 2021. [Dkt. No. 15-1] at 6. The policy also required all unvaccinated employees to wear a mask "over the nose and mouth at all times while on County premise[s] or property." Id. at 11. Through an email sent on November 3, 2021, the County extended the masking requirement to vaccinated employees when they were inside the County's buildings unless eating or alone in a walled room. Id. at 21. Employees who had received a religious or medical exemption from being vaccinated could also submit a request to be exempted from the weekly testing requirement. Id. at 10–11. All employees were warned that failure to comply with any portion of the policy would "result in the employee being subject to potential disciplinary action up to and including dismissal." Id. at 8.

The policy required employees to register their vaccination status through an online portal. [Dkt. No. 14] at ¶ 24; [Dkt. No. 15-1] at 8. On October 1, 2021, Chris Herrington, the Director of the Department of Public Works and Environmental Services ("DPWES"), sent an email to plaintiff and other employees specifying that "[f]ailure to register [vaccination status] is a violation of [C]ounty policy" and would subject employees "to discipline, up to and including dismissal." [Dkt. No. 15-1] at 18. Plaintiff did not register his vaccination status, [Dkt. No. 14]

---

were received by the Court at the same time as and are referenced in the Amended Complaint, the Court treats them as attachments to the Amended Complaint.

at ¶ 120; however, the County did not immediately fire him. Instead, it treated him as being unvaccinated, which meant that he was required to test weekly. Id.; [Dkt. No. 15-1] at 6. Plaintiff initially requested a religious exemption to the weekly testing requirement. [Dkt. No. 14] at ¶ 28; [Dkt. No. 15-1] at 24. That request was denied on December 3, 2021, and plaintiff was advised by Herrington that he needed to begin weekly COVID-19 testing the next week.[2] [Dkt. No. 14] at ¶ 29; [Dkt. No. 15-1] at 24.

On December 6, 2021, Human Resources ("HR") Manager Addie Armstrong sent "several emails" to plaintiff stating that if he did not come into compliance with weekly testing, he would be subject to the following progressive disciplinary measures "each time [he was] out of compliance: a written reprimand, a six week suspension and, eventually, termination." [Dkt. No. 14] at ¶ 30; [Dkt. No. 15-1] at 26. Plaintiff found the "tone" of the emails "aggressive and coercive." [Dkt. No. 14] at ¶ 30. Schneider was sent home without pay on December 16, 2021 after Branch Manager James Seaton "insisted that plaintiff wear a mask" and plaintiff refused to do so. [Dkt. No. 14] at ¶ 31; [Dkt. No. 15-1] at 42. On December 17, 2021, DPWES Deputy Director Eleanor Codding sent plaintiff a written reprimand for failure to comply with the COVID-19 policy and Herrington's order to test weekly for COVID-19, which she described as a "failure to comply with a proper order of an authorized supervisor." [Dkt. No. 14] at ¶ 32; [Dkt. No. 15-1] at 31. Plaintiff continued to refuse to test weekly, and on December 22, 2021, Codding gave plaintiff advanced notice of her recommendation that he be suspended for six weeks without pay for his continued refusal to comply with the COVID-19 policy and

---

[2] Plaintiff makes no claim that defendant improperly denied his request for a religious exemption. To the contrary, he told the defendant "he would like his status changed from 'declined religious exemption' to an ADA rights claim because of being regarded as disabled." [Dkt. No. 14] at ¶ 35.

3

Herrington's order to test weekly. [Dkt. No. 14] at ¶ 33; [Dkt. No. 15-1] at 34. Schneider was informed that while Herrington considered this proposed suspension, he was expected to test weekly, but he did not. [Dkt. No. 15-1] at 34.

In response to this notification, plaintiff sent Armstrong a "Notice of Employment Discrimination and Harassment Based on Disability" ("Notice") on December 22, 2021. [Dkt. No. 14] at ¶ 34; [Dkt. No. 15-1] at 37. In this Notice, plaintiff claimed that the County was "regarding him as having a disability" and "made a record of such disability" by classifying him as unvaccinated, which he claimed treated him as if he had an "impaired immune system" and an "impaired respiratory system." [Dkt. No. 15-1] at 37. Schneider stated that he believed the COVID-19 policy's weekly testing requirement was an "accommodation[]" for his perceived disability, and that his potential termination after he rejected this "accommodation[]" was discriminatory and retaliatory. Id. at 37–39 He also stated in this Notice that he was "claiming [his] rights under the ADA," and that he did "not need to file a 'medical' or 'religious' exemption" to the policy. Id. at 38. In response to this Notice, Armstrong sent plaintiff a form to claim a reasonable accommodation for a disability. [Dkt. No. 14] at ¶ 36. Plaintiff did not fill out the form because he claimed he was not requesting accommodations, but, rather, requesting that the County "provide some evidence on which to base its regarding him as if he had a disability." Id. Armstrong hosted a meeting with plaintiff on December 28, 2021, in which she directed him to speak with the "ADA Office of Human Rights and Equity Programs (OHREP)." Id. at ¶ 37. In this meeting, plaintiff told Armstrong that he felt he had been "tricked and coerced by his employer into assuming that a [r]eligious [e]xemption was the only option," to become exempt from the weekly testing requirement but he now believed that he could invoke his rights under the ADA. Id. at ¶ 40.

4

On December 28, 2021 and December 31, 2021, plaintiff sent two further emails "to all the relevant parties" responding to the advanced notification of suspension. [Dkt. No. 14] at ¶ 43–44. In the first email, he "stated that he was willing, ready and able to work," and reiterated that he was not claiming an actual disability under the ADA, but, rather that he was being improperly regarded as having a disability. Id. at ¶ 43. In the second, he proposed that, rather than comply with the weekly testing requirement, he stand outside of the building every morning and have someone deliver the keys to his work vehicle so that he could work without having to enter the building. Id. at ¶ 44. Defendant did not accept plaintiff's proposal.

On January 10, 2022, Herrington issued a memorandum suspending plaintiff for six weeks without pay, effective January 11, 2022, because of plaintiff's continued refusal to submit to COVID-19 testing. [Dkt. No. 14] at ¶ 46; [Dkt. No. 15-1] at 50–51. The memorandum further advised Schneider that "[c]ontinued refusal to complete weekly COVID testing may result in more serious disciplinary action, up to and including dismissal from County employment." [Dkt. No. 15-1] at 51. While suspended, plaintiff had an intake meeting with the OHREP office on January 11, 2022 and filed an EEOC Charge of Discrimination on February 9, 2022, [Dkt. No. 14] at ¶ 47–48, in which he reiterated his belief that the County regarded him as having an "impairment of [his] immune system and an impairment of [his] respiratory system," and that the County made a record of this perceived disability. [Dkt. No. 15-1] at 87.

On February 11, 2022, while plaintiff was suspended, Seaton called him to ask whether he intended to comply with the weekly testing requirement, to which plaintiff replied that he would not comply with either the testing or masking requirement. [Dkt. No. 14] at ¶ 49. Herrington informed Schneider on February 17, 2022 that his suspension would end on February 22, 2022, and that, upon his return, he was expected to wear a mask within County facilities and vehicles and that a box of self-test kits would be provided for him to comply with the weekly

5

testing requirement. [Dkt. No. 14] at ¶ 50; [Dkt. No. 15-1] at 73. In response, Schneider sent notices on February 17, 2022, and February 18, 2022 to multiple individuals in the County DPWES—including Armstrong, Codding, and Herrington—as well as to individuals in the County OHREP office, and Mindy Weinstein from the EEOC. [Dkt. No. 14] at ¶ 50; [Dkt. No. 15-1] at 77–81. In these notices, he claimed to have been "threatened" by Herrington's February 17 email, and reiterated his claim that he believed the County was discriminating against him by enforcing its COVID-19 policy. Id.

Plaintiff appeared for work on February 23, 2022, but stayed outside the building until 6:00 a.m., purportedly waiting for someone to give him the keys to his work vehicle. [Dkt. No. 15] at ¶ 54. Plaintiff then met with Seaton and Armstrong. Id. Armstrong asked Schneider whether he planned to wear a mask and comply with COVID-19 testing, and brought a bag full of COVID-19 test kits to give to plaintiff at this meeting. Id. When plaintiff replied that he would not test or wear a mask, she stated, "[o]kay, I have to give you every opportunity to comply." Id. Although plaintiff believes that he was effectively fired on this day, the documents attached to his Amended Complaint clearly show that he remained on administrative leave until his official termination on March 16, 2022. [Dkt. No. 14] at ¶ 51; [Dkt. No. 15-1] at 107–08.

In a memorandum sent to Schneider explaining why he was being fired, the defendant explained that it was due to his failure to comply with County policy—namely his refusal to test weekly and wear a mask when required—and his failure to comply with the direct order of his supervisor, Herrington, to test weekly. [Dkt. No. 15-1] at 91. Plaintiff was given five days from receipt of the notice to reply. Id. at 91–92. He sent an initial reply on February 23, 2022, stating that he was "surprised that DPWES seems incapable of addressing the underlying issue that [he has] repeatedly mentioned," specifically that he is claiming an exemption under the ADA based on being regarded as disabled by the COVID-19 policy. Id. at 94. Codding responded to

6

Schneider by offering to host a listening session with him, but Schneider refused to meet with her, stating that, although he "appreciate[d] the offer of a meeting," he was "concerned that if [his] position [was] not clear by now through the various written materials [he had] sent, then [he does not] expect it to be made clearer through a conversation." Id. at 96–99, 102.

On March 11, 2022, Schneider received a memorandum from Herrington notifying him of his final dismissal, effective March 16, 2022. [Dkt. No. 14] at ¶ 54; [Dkt. No. 15-1] at 107. The memorandum specified that plaintiff was terminated because of his failure to comply with County policy, stating that "[a]s of the date of this memorandum, you have not yet submitted to weekly COVID testing." [Dkt. No. 15-1] at 107. On March 15, 2022, plaintiff filed a grievance with the County, appealing Herrington's decision to terminate him. [Dkt. No. 14] at ¶ 56; [Dkt. No. 15-1] at 110. Herrington upheld his decision to dismiss Schneider. [Dkt. No. 15-1] at 113–14.

On April 6, 2022, the Director of OHREP notified plaintiff that it had concluded its investigation, and that it had determined there was insufficient evidence of harassment against plaintiff to sustain a complaint. [Dkt. No. 15-1] at 116. On May 5, 2022, plaintiff received his Right to Sue letter from the EEOC. [Dkt. No. 14] at ¶ 59. Plaintiff timely filed his first Complaint on August 3, 2022. [Dkt. No. 1]. In response, defendant filed a Motion to Dismiss for Lack of Jurisdiction because plaintiff named DPWES as the sole defendant, rather than Fairfax County. [Dkt. Nos. 4–5]. Plaintiff requested and was granted leave to file the pending Amended Complaint, naming Fairfax County as the defendant.[3] [Dkt. Nos. 7, 11, 14].

---

[3] The Amended Complaint fully names the defendant as "County of Fairfax dba County of Fairfax Department of Finance dba Fairfax County Department of Public Works and Environmental Services dba DPWES dba Fairfax County dba Fairfax County Virginia dba Fairfax County Board of Supervisors dba Department of Public Works and Environmental

## II. DISCUSSION

### A. <u>Standard of Review</u>

Defendant has moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) which requires a court to dismiss a complaint if the "plaintiff's allegations fail to state a claim upon which relief can be granted." <u>Abdelhamid v. Sec'y of the Navy</u>, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting <u>Adams v. NaphCare, Inc.</u>, 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). To survive a 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Although "a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)), a <u>pro se</u> complaint must still state a claim for relief that is plausible on its face. <u>Thomas v. The Salvation Army S. Territory</u>, 841 F.3d 632, 637 (4th Cir. 2016). "Without converting a motion to dismiss into a motion for summary judgment, a court may consider the attachments to the complaint, documents incorporated in the complaint by reference, and documents 'attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" <u>Lokhova v. Halper</u>, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020) (quoting <u>Sec'y of State for Defence v. Trimble Navigation Ltd.</u>, 484 F.3d 700, 705 (4th Cir. 2007)).

The Amended Complaint and its attachments contain a number of unsupported, conclusory allegations about the COVID-19 pandemic, the County's policy, and Schneider's rights under the ADA. Although the Court must accept as true all factual allegations contained

---

Services dba DPWES Wastewater Management"; however, it is clear that Fairfax County is the only proper defendant in this civil action.

in the Amended Complaint and will "draw all reasonable inferences [from those facts] in favor of the plaintiff," the Court is not required to accept unreasonable inferences as true. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011); Papasan v. Allain, 478 U.S. 265, 286 (1986).

### B. Count I: ADA Discrimination

Count I of the Amended Complaint alleges a claim of disability discrimination in violation of the ADA, 42 U.S.C. § 12112(a). To state a claim for disability discrimination under the ADA, a complaint must allege sufficient facts to show that a plaintiff (1) "has a disability, (2) "is a 'qualified individual' for the employment in question," and (3) that his employer "discharged [him] (or took other adverse employment action) because of [his] disability." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015). The ADA defines "a disability as "(1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." Miller v. Maryland Dep't of Nat. Res., 813 Fed. Appx. 869, 874 (4th Cir. 2020) (quoting Summers v. Altarum Inst., Corp., 740 F.3d 325, 328 (4th Cir. 2014)). Plaintiff does not claim in either his Amended Complaint or his opposition to the Motion to Dismiss that he has an actual disability under the ADA. Instead, the Amended Complaint alleges that the defendant violated the ADA by regarding the plaintiff as being disabled and making a record of plaintiff's having a disability by classifying him as unvaccinated. [Dkt. No. 14] at ¶ 63, 86, 120.

An individual is regarded as having a disability if he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12120(3)(A). Whether an employee is regarded as disabled is measured from the "reactions

9

and perceptions of the employer's decisionmakers." Wilson v. Phoenix Specialty Mfg. Co., Inc., 513 F.3d 378, 385 (4th Cir. 2008) (quoting Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 172–73 (4th Cir. 1997) abrogated on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998)). The Amended Complaint contends that the County's policy regarded unvaccinated individuals "'as if' they carried [COVID-19] or 'as if' they had an impaired or suppressed immune system that made them prone to contracting 'Covid-19.'" [Dkt. No. 14] at ¶ 7. This theory of liability has been rejected by multiple courts in this circuit and around the country.[4] For example, in Tony Jorgenson v. Conduent Transport Solutions, Inc., 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023), a case involving nearly identical facts and arguments raised by Schneider, the court concluded that it was implausible that the employer regarded all unvaccinated employees as having COVID-19. In addition, a judge in this district has held that, to the extent requiring unvaccinated employees to test weekly suggests a belief that they are more prone to contracting COVID-19, "possible future exposure to COVID-19 does not constitute an impairment under the ADA." Hice v. Mazzella Lifting Techs., Inc., 589 F. Supp. 3d 539, 550 (E.D. Va. 2022).

The Amended Complaint contains no plausible factual allegations to suggest that the defendant regarded Schneider as having a physical or mental impairment. Instead, the alleged facts show that plaintiff was subject to a generally applicable policy which required him, as well as all other County employees, to disclose their vaccination status and to provide evidence of weekly testing if unvaccinated, all of which plaintiff refused to do. Plaintiff's refusal to follow

---

[4] See Speaks v. Health Sys. Mgmt., Inc., 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022); Lundstrom v. Contra Costa Health Services, 2022 WL 17330842 (N.D. Cal. Nov. 29, 2022); Shklyar v. Carboline Co., 2022 WL 2867073 (E.D. Mo. July 21, 2022); Linne v. Alameda Health Sys., 2023 WL 375687 (N.D. Cal. Jan. 24, 2023).

his employer's requirement to report his vaccination status which led the County to treat him as unvaccinated "is not the same as believing [he] has a physical or mental impairment." Jorgenson, 2023 WL 1472022, at *4. See Speaks v. Health Sys. Mgmt., Inc., 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Again, there is no plausible basis to conclude that Health Systems regarded Speaks as having a 'physical or mental impairment.' The Company only regarded Speaks as being required—like all of its employees—to obtain a COVID-19 vaccine or be approved for an exemption and then 'regarded' her as having failed to do so by the deadline to become vaccinated."). For these reasons, the Amended Complaint fails to allege a plausible claim that the County regarded plaintiff as disabled.

For similar reasons, the Amended Complaint has failed to allege that the County created a record of plaintiff having a disability. When alleging an ADA violation based on a record of impairment theory, a complaint must allege facts supporting a plausible claim that a plaintiff has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." Rhoads v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001). The Amended Complaint does not allege that plaintiff has a "history" of any purported impairment. Instead, it alleges that plaintiff was misclassified as having a disability when defendant classified him as an "'unvaccinated' employee" which plaintiff construes as equivalent to classifying him as "impaired by a contagious disease and . . . by a suppressed or weak immune system or respiratory system that makes [him] vulnerable to 'Covid-19.'" [Dkt. No. 14] at ¶ 119.

Again, plaintiff's argument rests on the implausible theory that being labeled as "unvaccinated" means that defendant assumed he had COVID-19 or that he had an impaired immune system. Because "[m]erely requiring [p]laintiff to follow a COVID-19 safety policy applicable to all employees does not support the inference that [the employer] classified

11

[p]laintiff as disabled under [the] ADA," the Amended Complaint has not alleged that Schneider was disabled under either the regarded-as or record-of prongs of the ADA. Jorgenson, 2023 WL 1472022, at *4. For these reasons, plaintiff's Amended Complaint fails to allege a plausible claim of disability discrimination in violation of the ADA, and Count I will be dismissed.

### C. Count II: ADA Retaliation

The Amended Complaint also fails to plausibly allege that the defendant retaliated against Schneider in violation of the ADA. 42 U.S.C. § 12203(a). To state a claim for ADA retaliation, a complaint must allege "(1) that [a plaintiff] engaged in protected conduct; (2) suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." Jones v. HCA, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) (citing A Soc'y Without A Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011)). Because a plaintiff need not show that he or she is disabled within the meaning of the ADA to assert a claim for retaliation, the Amended Complaint's failure to allege that Schneider was disabled does not bar his retaliation claim. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 577 (4th Cir. 2015) (Rhoads, 257 F.3d at 391). Although protected conduct under the ADA includes an employee's opposition to "any act or practice made unlawful by" the ADA, 42 U.S.C. § 12203, the ADA does not require a plaintiff "to prove the conduct he opposed was actually an ADA violation." Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 154 (4th Cir. 2012). Instead, a plaintiff "must demonstrate that he had 'a reasonable, good faith belief' that the [employer's] conduct violated the ADA." Thompson v. City of Charlotte, 827 Fed. Appx. 277, 279 (4th Cir. 2020).

Schneider argues that he engaged in protected conduct in three ways: (1) when he communicated to his employer starting on December 22, 2021 that he believed he was being discriminated against in violation of the ADA; (2) when he refused to test weekly in violation of the County's policy; and, (3) when "he filed an EEOC complaint." [Dkt. No. 20] at 9.

12

Schneider's opposition to the COVID-19 policy through his refusal to test weekly does not constitute protected activity because it is not plausible that plaintiff held a "reasonable, good faith belief" that the defendant was violating the ADA when it imposed a policy that applied to all County employees and was enacted to "safeguard the health of employees, their families, colleagues, citizens, visitors, and the community at large against COVID-19 infection." [Dkt. No. 15-1] at 8. To find this belief reasonable "would permit any plaintiff to set up a retaliation claim simply by using the term 'ADA discrimination' and later claiming a good faith belief, however patently unfounded, that his conduct was protected." Jorgenson, 2023 WL 1472022, at *6. For these reasons, plaintiff's opposition to the policy through his refusal to take weekly tests does not constitute protected activity.

Plaintiff did engage in protected activity when he filed an EEOC Charge on February 9, 2022. Kelly v. Town of Abingdon, Virginia, 558 F. Supp. 3d 289, 302 (W.D. Va. 2021) ("[F]iling a charge of discrimination with the EEOC is protected conduct under the ADA."); Jones, 16 F. Supp. 3d at 635. Additionally, the defendant does not dispute that plaintiff engaged in protected conduct on December 22, 2021 when he sent his Notice opposing the vaccination policy. [Dkt. No. 18] at 15. The defendant also does not dispute that plaintiff has alleged that he suffered an adverse action when he was suspended without pay and finally terminated from his employment [Dkt. No. 18] at 15; however, the defendant correctly argues that the Amended Complaint has not alleged a plausible causal connection between any of plaintiff's protected activities and either his suspension or termination.

All of defendant's employees were alerted to the COVID-19 policy on September 3, 2021, more than four months before plaintiff's suspension on January 10, 2021,[5] and more than six months before plaintiff's dismissal became final on March 16, 2022. As clearly stated in the policy and in an email sent directly to Schneider and other employees on October 1, 2021, failure to comply with the policy would lead to discipline up to and including dismissal. [Dkt. No. 15-1] at 8, 18. Because the COVID-19 policy was in place before any conduct plaintiff alleges to be protected activity occurred and because the policy clearly stated that dismissal could be a consequence for non-compliance, it is implausible to suggest that Schneider's termination was a result of any of his protected activity rather than a result of his decision not to comply with the policy. "Courts regularly dismiss retaliation complaints in these circumstances, because the consequences for non-compliance with the policy were established before any alleged protected activity occurred." Jorgenson, 2023 WL 1472022, at *6 (citing Speaks, 2022 WL 3448649, at *6; Lundstrom v. Contra Costa Health Services, 2022 WL 17330842, at *6 (N.D. Cal. Nov. 29, 2022); Shklyar v. Carboline Co., 2022 WL 2867073, at *5–6 (E.D. Mo. July 21, 2022)). Crucially, plaintiff admits in the Amended Complaint that the County fired him "as a direct and proximate cause of his refusal to participate in the defendant's 'Covid-19 Policy,'" not because of his engagement in any protected activity such as his communicated opposition to the policy or filing his EEOC Complaint. [Dkt. No. 14] at ¶ 166.

Moreover, even though the County's policy clearly indicated that Schneider could be terminated for failing to comply with its directives, the defendant gave Schneider multiple opportunities to come into compliance with the policy. For example, it considered his request

---

[5] To the extent that plaintiff argues that the one-day suspension without pay on December 16, 2022 constituted an adverse action, this was over three months after being notified about the policy, presenting the same causation issue.

for a religious exemption from testing and, rather than terminating him, it labeled him as "unvaccinated" when he did not submit his vaccination attestation. When plaintiff continued to refuse to test weekly, it did not terminate him immediately, but subjected him to progressive discipline including a written reprimand and a six week suspension, and a representative even carried COVID-19 tests directly to the plaintiff "to give [him] every opportunity to comply." [Dkt. No. 15] at ¶ 54. Defendant even approved a religious exemption from the vaccination mandate for plaintiff, which he refused to accept. Finally, it offered him a listening session to speak about his proposed termination, which he refused to attend. Despite the County's efforts, plaintiff was terminated for his continued refusal to comply with the County's COVID-19 policy and the directions of his supervisor. Because the Amended Complaint has failed to allege a plausible causal connection between any of Schneider's protected conduct and the adverse actions taken against him, it has failed to state a claim for retaliation under the ADA. Therefore, Count II will be dismissed.

### III. CONCLUSION

For the reasons discussed above, defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) will be granted by an Order to be issued with this Memorandum Opinion, and this civil action will be dismissed with prejudice given that plaintiff has already had one opportunity to amend his Complaint and any further amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

Entered this 2nd day of March, 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge